Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8424 | **DATE** | 10/1/2003 |
| **CASE TITLE** | Edward Lee vs. Experian Information Solutions | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Experian's Rule 56 motion is granted in full. This action is dismissed with prejudice. (9-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 2 200 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 15 |
| | Copy to judge/magistrate judge. | | | |
| SN | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EDWARD LEE, )
)
Plaintiff, )
)
v. ) No. 02 C 8424
)
EXPERIAN INFORMATION SOLUTIONS, )
)
Defendant. )

OCT 2 - 2003

## MEMORANDUM OPINION AND ORDER

Edward Lee ("Lee") brought a two-count complaint against

consumer reporting agency Experian Information Solutions

("Experian"), alleging violations of the Fair Credit Reporting

Act ("Act", 15 U.S.C. §§1681-1681u[1]) as well as asserting a

common law defamation claim.[2] Experian has moved for summary

judgment as to all claims under Fed. R. Civ. P. ("Rule") 56.

Because Experian has demonstrated there is no genuine issue of

material fact as to any of Lee's claims, its Rule 56 motion is

granted and this action is dismissed with prejudice.

### Summary Judgment Standard

To succeed on a summary judgment motion, the moving party

has the burden of establishing that there is no genuine issue of

---

[1] Citations to that statute will take the form "Act §--,"
using the Title 15 numbering rather than the Act's internal
numbering.

[2] Lee initially also sued Credit Management, Inc. ("CMI"),
the company that furnished the information to Experian. All
those claims against CMI have been dismissed pursuant to a
settlement between Lee and CMI.

material fact (<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)). In making its summary judgment determination, a court considers the evidentiary record in the light most favorable to the nonmovant and draws all reasonable inferences in its favor (<u>Lesch v. Crown Cork & Seal Co.</u>, 282 F.3d 467, 471 (7th Cir. 2002)).

But the nonmovant "must produce more than a scintilla of evidence to support his position" that there is a genuine issue of material fact (<u>Pugh v. City of Attica</u>, 259 F.3d 619, 625 (7th Cir. 2001)). Rather the nonmovant "must set forth specific facts that demonstrate a genuine issue of triable fact" (<u>id</u>.). Ultimately summary judgment is proper only if a reasonable jury could return a verdict for the nonmovant (<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

<u>Facts</u>

Experian is a consumer reporting agency as that term is defined by Act §1681a(f)(E. St. ¶5).[3] As a consumer reporting

---

[3] LR 56.1 requires parties to submit evidentiary statements and responses to such statements, with the aim of highlighting which facts are disputed and which facts are agreed upon. This opinion cites to Experian's LR 56.1 Statement as "E. St. ¶--," to Lee's response as "L. Resp. ¶--" and to Lee's LR 56.1 Statement as "L. St. ¶--." Where an assertion in either party's LR 56.1 statement is undisputed by the opponent, the opinion includes only a citation to the original statement. "E." and "L." designations are also used in referring to all other documents submitted by the parties. Finally, Lee's admissions in response to Experian's requests to admit are cited "L. Adm. ¶--," and his responses to Experian's interrogatories are cited "L. Int. Ans. ¶--."

agency, Experian collects credit information furnished to Experian by other sources such as CMI and generates credit reports that are then given to the consumer or others upon request.

On July 16, 2002 Lee telephoned Experian to request a copy of his credit report (E. St. ¶8). Experian mailed the report to Lee that day (id.). After noting what he believed to be an inaccuracy in the report, Lee again called Experian on July 25, 2003 and asked that it reinvestigate the accuracy of a collection account from a cable company furnished to it by CMI (E. St. ¶9, L. St. ¶4).

In response to Lee's inquiry Experian sent CMI a Consumer Dispute Verification form (commonly called a "CDV") that same day (E. St. ¶12). In the CDV Experian advised CMI that Lee claimed he had returned his cable box to the company, so that the collection account should not be included in his credit report (E. St. ¶13).

CMI returned the CDV to Experian on August 22, 2002 with two notations for changes (E. Ex. 5): CMI corrected the name of the cable company (id.),[4] and it changed the status date for collection from September 30, 1999 to January 1999 (id.). CMI

---

[4]   It is ironic that Lee charges Experian with using an inaccurate name in his credit report, given that at one point in his response to Experian's Rule 56 motion his counsel incorrectly refers to it as "Equifax" (L. Mem. 12).

did not, however, indicate that the collection account should be deleted from Lee's credit report (E. St. ¶15). After receiving the CDV from CMI, Experian changed the name of the cable company in Lee's credit report and added a notation that the account had been "verified and updated on 8-2002" (E. Ex. 6), but it did not change the collection date (id.). Experian mailed Lee an updated version of the report on August 22, 2002 (E. St. ¶16).

Lee called Experian on September 3 and again on October 2, 2002 to check on the status of his credit report (L. Adm. ¶¶7, 9-11).[5] On October 11, 2002 CMI reported to Experian that the collection account should be deleted (Hughes Decl. ¶12). Experian did so on October 22, 2002 (id. ¶14),[6] ten days before Lee filed his Complaint here.

---

[5] Lee also says at his L. Mem. 9 that he "telephoned Experian on several occasions to request an investigation into his credit file between September 3, 2002 and October 2, 2003." But even apart from the fact that October 2, 2003 has not yet arrived, Lee purports to support that statement by referring to his own admission to the contrary: that he "made no attempt to contact Experian, either personally or through his attorneys, between September 3, 2002 and October 2, 2002" (L. Adm. ¶14). In any case, Lee's Mem. 9 statement is not evidence and is therefore disregarded.

[6] Lee does not admit that deletion date (L. Resp. ¶19), but he does not offer an alternate date. In any event, his own Rule 56.1 statement acknowledges that when he received a credit statement from Experian on January 13, 2003 the CMI collection account had been deleted (L. St. ¶12). As this opinion will show, any claimed date discrepancy does not raise a genuine issue of material fact sufficient to avoid summary judgment.

## Claims Under the Act

Lee claims Experian violated his rights under the Act by not following reasonable procedures to assure the accuracy of his account (as required by Act §1681e(b)) and by not conducting an adequate reinvestigation when a dispute arose (as required by Act §1681i(a))(Complaint ¶20).[7] This opinion addresses those claims in turn.

### Reasonable Procedures for Assuring Accuracy

Act §1681e(b) provides:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

To avoid summary judgment on his claim under that provision, Lee must raise a genuine issue of material fact as to each of four elements: (1) that there was inaccurate information in his consumer credit report, (2) that the inaccuracy was due to Experian's failure to follow reasonable procedures to assure accuracy, (3) that he suffered actual damages and (4) that those

---

[7] Although Lee's Complaint also included a claim involving consumer dispute statements under Act §1681i(c) as well as a state law defamation claim (Complaint ¶¶20(e), 22-31), he has failed even to address those claims in response to Experian's motion for summary judgment. Accordingly he has neither sufficiently raised any genuine issue of material fact nor cast any doubt on Experian's assertions that neither claim presents a genuine issue of material fact. Hence Experian's summary judgment motion is granted as to both of those claims (Palmer v. Marion County, 327 F.3d 588, 597-98 (7th Cir. 2003)).

damages were caused by the inaccuracy (<u>Philbin v. Trans Union Corp.</u>, 101 F.3d 957, 963 (3d Cir. 1996), followed in <u>Zahran v. Trans Union Corp.</u>, No. 01 C 1700, 2003 WL 1733561, at *4 (N.D. Ill. Mar. 31)).

As to the issue of inaccurate information, both the name of the cable company and the original date that the account went into collection were concededly inaccurate in Lee's credit report (E. St. ¶14). But neither party has submitted any evidence tending to prove or disprove a <u>material</u> inaccuracy (that is, a <u>continued</u> mistaken inclusion of the collection account in Lee's credit report).

With all reasonable inferences being drawn in Lee's favor, the fact that CMI directed Experian to remove the account from Lee's credit report on October 11, 2002 could perhaps indicate that before that time the collection item was erroneously included in Lee's credit report (E. St. ¶17). To be sure, such a conclusion of prior inaccuracy is by no means required--for example, CMI may have instructed Experian to remove the collection account from Lee's credit report because Lee had returned the cable box or had otherwise satisfied his credit obligation (see, e.g., <u>Cahlin v. Gen. Motors Acceptance Corp.</u>, 936 F.2d 1151, 1160 (11th Cir. 1991)). By definition Lee had to know whether any such other explanation was nonexistent--so his silence on the subject scarcely justifies a reasonable inference

in his favor. But rather than resting on that failure on Lee's part to offer evidence necessarily within his control, this opinion will go on to demonstrate that Lee cannot satisfy any of the other elements of his Act §1681e(b) claim in any event.

To shift to the requirement of reasonable curative procedures, the Act's statutory scheme recognizes that complete accuracy of all credit reports from their very inception is of course impossible. Thus consumer reporting agencies such as Experian are not held to strict liability for the accuracy of the information in the reports they produce and disseminate--they must rather maintain reasonable procedures for assuring maximum accuracy (Act §1681e(b)). Reasonable procedures are "those that a reasonably prudent person would undertake under the circumstances" (Philbin, 101 F.3d at 963; Zahran, 2003 WL 1733561, at *4).

Most often the question of reasonable procedures is a jury question (Crabill v. .Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001)). There are however situations in which a court can determine that the procedures used by a particular consumer reporting agency are reasonable as a matter of law--where the reasonableness of the procedures used by the consumer reporting agency is beyond question (id.). For example, Henson v. CSC Credit Servs., 29 F.3d 280, 285 (7th Cir. 1994) held as a matter of law that consumer reporting agencies are not liable for

reporting information from a judgment docket unless the agency
has prior notice from the consumer that the information might be
inaccurate. And that requirement of prior consumer notice
logically extends to the nonimposition of agency liability for
any other type of inaccuracy (see, e.g., <u>Zahran</u>, 2003 WL 1733561,
at *5).

Here Lee's claim cannot survive summary judgment because
Experian's procedures for assuring accuracy, both before and
after July 25, 2002, were reasonable as a matter of law. As
Experian has stated, and Lee has not disputed, before July 25
Experian had "no reason to doubt the accuracy of the CMI account
appearing on Plaintiff's credit report" (E. St. ¶11). Absent
notice from Lee that the inclusion of the collection account or
of the information about the account was possibly incorrect,
Experian is not liable to Lee for the pre-July 25 inaccuracy.

Once Lee placed Experian on notice that there was a claimed
inaccuracy in his credit report, the window of potential
liability opened and Experian was responsible for mobilizing its
reasonable procedures to assure accuracy. Experian's assertion
at E. R. Mem. 5 that Lee's argument can be neatly divided into
two sections--a pre-July 25 Act §1681e(b) argument and a post-
July 25 Act §1681i(a) argument--oversimplifies the issue. As
explained hereafter, a more nuanced approach instead reveals that
after July 25 Experian used reasonable procedures to assure

8

accuracy under Act §1681e(b) because as a matter of law it satisfied its reinvestigation obligation under Act §1681i(a).[8]

In that respect, Lee Mem. 12 argues that according to Philbin and Parker v. Parker, 124 F.Supp.2d 1216 (M.D. Ala. 2000) any inaccuracy on Lee's credit report both shifts the burden of proof to Experian as to its use of reasonable procedures and also absolutely entitles Lee to present the issue of reasonable procedures to a jury. That misreads the cases and, even more significantly, is at odds with both common sense and the Act.

First, Philbin simply does not hold that the burden of persuasion shifts to the reporting agency to prove the reasonableness of its procedures as soon as a consumer has identified an inaccuracy in his or her credit report. Philbin, 101 F.3d at 965 rather adopts the "somewhat narrower, and more plausible," notion that the existence of an inaccuracy will often create a question for the jury, but it does not shift any burden to the defendant. Even then, Philbin, id. adds that if a plaintiff can indeed prove an inaccuracy in his or her credit report, a defendant can still prevail on summary judgment if it

_____

[8] Because the duty of reinvestigation is imposed by Act §1681i(a) in response to a consumer's concern about a specific item on his or her credit report, a consumer reporting agency's obligation under that section is more stringent than its Act §1681e(b) obligation (Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997)). So if Experian has satisfied its Act §1681i(a) obligation, it has a fortiori met the requirements of Act §1681e(b).

demonstrates as a matter of law that the procedures it used to assure accuracy were reasonable.

As for Parker, it held that inaccuracy alone is enough to avoid summary judgment where an item in a consumer's credit report is "undisputedly incorrect" (124 F.Supp.2d at 1225). By contrast, it has already been said here that the relevant inaccuracy in Lee's credit report (the existence of the CMI collection account) has not been established unequivocally (if indeed at all). So even if district court decisions created precedent, as they do not, Parker would not serve that role in Lee's situation.

Here Experian followed up on Lee's notice of claimed inaccuracy by sending a "confirm or deny" inquiry to the source of the asserted error, CMI. And when it received a response that bore every indicium of an investigation rather than a rote response from CMI, Experian modified Lee's credit report accordingly. That satisfies the Philbin-required showing that Experian's procedures for policing the accuracy of its credit reports were reasonable as a matter of law. And that spells doom for Lee's federal claims in Rule 56 terms.

But even had it been otherwise--even had Lee not been impaled on that prong of the four-element claim under Act §1681e(b)--he would still lose. And that is so because he has sustained no actual damages in consequence of any alleged failure

on Experian's part to maintain the required reasonable procedures.

Lee claims that his pecuniary damages comprise denials of credit by a car dealership, Banana Republic and Sprint PCS (L. Int. Ans. ¶21). While all three of those companies did view Lee's credit report, all of their inquiries took place either before July 2 or after October 22, 2002 (E. Ex. 7). So during the critical period of potential liability--from the moment Experian was notified of the inaccuracy on July 25 to the moment that the collection account was ultimately removed from Lee's report on October 22, 2002--no outside third party even asked to look at Lee's report, let alone denied him a line of credit that might give rise to monetary damages (E. Ex. 7). In sum, Lee's claim for pecuniary damages fails because he indisputably suffered no actual loss during the relevant period of possible liability.

Lee also claims damages for emotional distress (Complaint ¶14(b)). But to recover on such a claim Lee must at least "reasonably and sufficiently explain the circumstances of the injury rather than relying on mere conclusory statements" (Alston v. King, 231 F.3d 383, 388 (7th Cir. 2000)). Lee's generalized assertions that he "feels victimized from his inability to facilitate getting his credit report corrected" and is "too embarrassed to attempt to obtain a mortgage with the state of his

11

credit report" (L. Int. Ans. ¶21) are far too conclusory and
short of what the caselaw requires of such a claim to be legally
sufficient (see <u>Cousin v. Trans Union Corp</u>, 246 F.3d 359, 370-71
(5th Cir. 2001)).

Lee has thus looked at a called "strike two" in a game in
which one strike is out.  Summary judgment must also be entered
against him because he has not raised a genuine issue of material
fact on the damages element of his Section 1681e(b) claim.

And as if that were not enough (and it is), Lee also falls
at the final hurdle (to mix metaphors and sporting events)--the
need to show the element of causation.  In that respect Complaint
¶21 simply asserts that Experian's alleged failure to maintain
reasonable procedures for assuring accuracy was "a direct and
proximate cause" of any possible damages--a required component of
an Act §1681e(b) claim (<u>Crabill</u>, 259 F.3d at 664).

As is always true in the area of proximate cause, the causal
relationship need not be exclusive--the correct locution is "a"
proximate cause (as Lee's counsel has framed it), not "the"
proximate cause.  If Lee can show that the inclusion of the CMI
collection account "was a substantial factor that brought about
the denial of credit" or some other actual damage, he could
satisfy that component of his Act §1681e(b) claim (<u>Philbin</u>, 101
F.3d at 968).

On that score Lee confronts a major problem:  CMI's report

12

of a collection account as to the cable box was far from the only credit problem specified in Lee's report. During the period in question Lee's report also reflected an outstanding civil judgment dating back to 1996 (and thus unpaid for some six years!) as well as late payments on another account (E. St. ¶¶21-22). Those credit blemishes, either singly or in combination, could well have accounted for any claimed inability on Lee's part to take advantage of credit opportunities.

Yet Lee has produced neither any documentary (or other) evidence indicating that he was denied credit at all nor any evidence suggesting that he was unable to secure credit because of the inaccurate inclusion of the CMI collection account in his credit report (L. Int. Ans. ¶¶20-21). While to be sure all reasonable inferences must be drawn in Lee's favor, it is appropriate here to resolve the causation issue at the summary judgment stage because no reasonable jury could conceivably find that a causal connection exists between the alleged statutory violation and any ensuing damages (Cousin, 246 F.3d at 370).

Even then if three strikes were required (of course they are not--as already said, even one suffices), Lee must be called out on his Act §1681e(b) claim. Experian's Rule 56 motion is granted as to that claim.

Reinvestigation Obligation

Lee also maintains that Experian did not properly

reinvestigate the inaccuracy of the CMI collection account as
required by Act §1681i(a)(1)(A):

> If the completeness or accuracy of any item of
> information contained in a consumer's file at a
> consumer reporting agency is disputed by the consumer
> and the consumer notifies the agency directly of such
> dispute, the agency shall reinvestigate free of
> charge...before the end of the 30-day period beginning
> on the date on which the agency receives the notice of
> the dispute from the consumer.

As with Act §1681e(b), the potential for Act §1681i(a)(1)(A)
liability does not arise until the consumer reporting agency
receives notification from a consumer about a potential
inaccuracy in his credit report (Casella v. Equifax Credit Info.
Servs., 56 F.3d 469, 474 (2d Cir. 1995)).

Once that has been done, the consumer reporting agency has a
duty to reinvestigate to assure that the information is correct.
In some instances a consumer reporting company may even be
required to go beyond the initial source of its information and
conduct its own independent investigation (Henson, 29 F.3d at
287). Henson, id. identifies as factors that are relevant to
triggering a duty of independent reinvestigation (1) whether the
consumer has alerted the consumer reporting agency to the
possibility of an inaccuracy, (2) whether the agency itself knows
or should know that the source of its information is unreliable
and (3) the cost of independent verification of accuracy as
against the possible harm caused by inaccurate information.

Although the issue is not fully elucidated by either party,

14

Experian's duty to reinvestigate might conceivably have arisen at two different points: On July 25, 2002, when Lee notified Experian that there was a possible inaccuracy in his credit report, and on September 3 or October 2, 2002, when Lee telephoned Experian after the name and collection date of the CMI collection account were changed but before the account was deleted entirely. Analysis demonstrates that Experian met its Act §1681i(a)(1)(A) obligation satisfactorily in each instance.

After first learning that Lee believed there was an inaccuracy in his credit report as to the collection account with CMI, Experian initiated its standard reinvestigation procedure using CDVs (described in Hughes Decl. ¶¶3-4). Experian admits that its reinvestigation stopped there--it communicated neither with Lee (to request additional documents or information) nor with the cable company directly (L. St. ¶¶9-10).

But what Experian did was still statutorily sufficient. Quite understandably in light of the staggering amount of credit that fuels our economy and the enormous burden (and hence cost) that a general requirement of more detailed follow-up procedures would impose on the system, the CDV procedure alone is accepted by courts as an adequate method both for assuring accuracy and for reinvestigation (see, e.g., <u>Dickens v. Trans Union Corp.</u>, No.

00-5605, 2001 WL 1006259, at *4 (6th Cir. Aug. 23).[9]  Experian

completed its CDV process and made indicated changes within the

statutorily required time period (E. Ex. 6; Act §1681i(a)(1)(A)).

As for the second possible triggering event that might

potentially call for an independent investigation, what of Lee's

calls on September 3 and October 2, 2002?  In brief, that would

not be reasonable, for Lee admits that those calls were only "to

check the status of his Experian credit report" (L. Adm. ¶¶7-11),

and he identifies the first occasion already discussed (July 25,

2002) as the only time he disputed the accuracy of his credit

_____

⁹ If this issue were placed before our economics-oriented
Court of Appeals, it would be a reasonably safe bet that it would
point out the consequences of a broadly imposed requirement of
greater independent investigation, rather than a selective
requirement limited to cases where suspicious circumstances
plainly indicate a need for further inquiry.  Any such
transformation of the credit reporting industry, which
essentially disseminates information that it derives from those
who extend credit, into a set of comprehensively active
investigative agencies--with the corresponding explosion of
resources needed to perform that function--would generate
disproportionate costs that would have to be passed along to
everyone who seeks credit (note the cost v. harm analysis called
for by Henson, 29 F.3d at 287).  Lee's counsel, who specialize in
representing consumer clients such as Lee, blind themselves to
the disservice they do to the entire consumer universe by seeking
to push the envelope as they have done in this case.  As Oscar
Wilde said in Lady Windermere's Fan:

        In this world there are only two tragedies.
        One is not getting what you want, and the
        other is getting it.

In this instance the far greater tragedy would be for Lee's
counsel to obtain an independent investigation rule of the type
that they urge.

report (L. Int. Ans. ¶19).

When the Henson factors are applied to both of the potential occasions for requiring a broader--and independent--reinvestigation, it is clear that Experian had no such duty at either juncture.  This was not a situation in which CMI failed to return the CDV form to Experian or indicated that there was any doubt as to the completeness of the information it was providing on the CDV (contrast Stevenson v. TRW, Inc., 987 F.2d 288, 293 (5th Cir. 1993)).  Importantly, CMI did not respond to Experian that the account should be deleted entirely, even in the face of Experian's notation that the existence of the account was what Lee disputed (E. St. ¶¶14-15).  Instead CMI took some weeks to conduct what Experian had no reason to believe was anything less than a complete investigation before returning the CDV to Experian with only minor changes.[10]

Nor was this a situation in which Lee continued to dispute the accuracy of the information in the CMI collection account or the existence of the account after Experian made the changes that CMI indicated on the CDV.  Nothing that Lee has submitted ascribes any such content to his September 3 and October 2, 2002 calls to Experian.  On the record before this Court, Experian

---

[10]  Interestingly, Lee's own materials include deposition testimony offered by an Experian employee from another matter, emphasizing that Experian's experience shows the sources of its information (which would presumably include CMI) to be generally very reliable (see L. Mem. 22).

17

simply had no reason to believe that the information it received from CMI was unreliable or incomplete, so it had no arguable obligation to conduct its own independent investigation as part of the reinvestigation process required by Act §1681i(a)(1)(A).[11]

Even apart from Lee's already-discussed failure to create a reasonable inference as to damages (which of itself dooms his case), he has thus fallen fatally short on his independent investigation claim. There is no occasion to submit a decision as to the <u>Henson</u> factors to a factfinder for resolution (<u>Curtis v. Trans Union LLC</u>, Nos. 02 C 207 & 208, 2002 WL 31748838, at *5 (N.D. Ill. Dec. 9)). So summary judgment is also entered in favor of Experian on Lee's Act §1681i(a)(1)(A) claim.

## Additional Damages Considerations

What has been said up to this point of course torpedoes Lee's claims for statutory and punitive damages. But it is worth spending a moment to observe that even if Lee had been able to avoid summary judgment on his substantive claims, his plea for such statutory and punitive damages is also completely unsubstantiated.

Any imposition of statutory damages under Act §1681n(a)

---

[11] This does not of course negate the existence of a duty to conduct an independent investigation (L. Mem. 15; <u>Cushman</u>, 115 F.3d at 225). It rather means that given the absence of any indication of nonreliability here, Experian's CDV procedure was sufficiently interactive to satisfy Experian's §1681i(a) obligation.

would require a showing that Experian acted in willful noncompliance of its Act-created obligations so as to exhibit an intentional disregard for a consumer's rights (Field v. Trans Union LLC, No. 01 C 6398, 2002 WL 849589 (???), at *7 (N.D. Ill. May 3)). Thus such acts as willful concealment, misrepresentations or systematic deprivation of consumers' rights could justify an award of statutory, or perhaps punitive, damages (Kronstedt v. Equifax, CSC, No. 01-C-0052-C, 2001 WL 3412478, at *14 (W.D. Wis. Jan. 28, 2002); Sheffer v. Experian Info. Solutions, Inc., No. CIV. A. 02-7407, 2003 WL 21710573, at *3 (E.D. Pa. July 24)).

While Lee is correct that Sheffer allows for statutory or punitive damages where more than an isolated human error is presented, no facts support an inference of intentional systematic noncompliance in his case. Far from being in willful noncompliance with the Act, Experian has offered ample evidence to show that it has systems in place to assure that consumers' rights are adequately protected. Hence Lee's claim for either statutory or punitive damages fails.

## Conclusion

This opinion's analysis has given Lee and his counsel more than their due. It is frankly questionable whether this lawsuit should ever have been brought, given the minor nature and tenuousness of Lee's purported grievance (particularly where Lee

was already a demonstrably bad credit risk independently of that grievance and has tendered nothing to suggest that he was harmed by Experian's conduct). It is even more questionable whether the lawsuit should have been pursued once all of the facts were before Lee's counsel. But they have persisted in trying to grab the brass ring of recovery under the Act, and they have failed utterly. Lee has not raised any genuine issue of material fact as to any of his Act-based claims or as to his state law defamation claim (in the latter respect, see n.7).

Experian's Rule 56 motion is granted in full. This action is dismissed with prejudice.

_____
Milton I. Shadur
Senior United States District Judge

Date: October 1, 2003